THE PEOPLE OF THE STATE OF NEW YORK, *v.* EUGENE ECKERT,
Defendant.

County Court, Chautauqua County, November 20, 1942.

*Edwin G. O'Connor, District Attorney,* for motion.

*Anthony Rizzo* for defendant, opposed.

OTTAWAY, J.  The defendant, Eugene Eckert, has been previously before our courts and has been once convicted of felony. In the present case the indictment charges assault in the second degree.  His somewhat erratic or unexplainable conduct had previously attracted the attention of the public authorities and again attracted attention when he was apprehended in the case before us.  The result was an order sending him to the Gowanda State Homeopathic Hospital for examination.  That institution reported a finding that the defendant is not insane.

When this indictment was finally reached for trial, defendant's then counsel had caused an examination of defendant to be made by qualified mental examiners, who reported their findings to the effect that the defendant was defective.  On September 28, 1942, the defendant entered a plea of guilty of assault in the second degree and the court, relying upon the certificates relating to defectiveness, committed the defendant to the Institution for Male Defective Delinquents at Napanoch. There was a little delay in transfer, but the defendant reached that institution on October 9, 1942.  On October 16, 1942, the Superintendent, after careful study of the defendant, reached

the conclusion that he was not defective and issued a certificate that his confinement in that institution was unsuitable. (Correction Law, § 442; Cons. Laws, ch. 43.)

On this certificate the County Court ordered the defendant returned to Chautauqua county, and on October 25, 1942, he was so returned. At the next session of County Court the defendant was brought before the court and the District Attorney moved for sentence. The defendant moved for dismissal of the charge and for his release on the ground that he had once been sentenced, that the indictment was disposed of and that further sentence placed him in double jeopardy. These motions are before us for determination.

Clearly the question of whether or not this is double jeopardy and the question of whether or not this court has lost jurisdiction to sentence depend upon a determination of just what occurs legally when a defendant, having first been found guilty of a crime, is committed to the institution in question. Is this commitment in any sense a sentence of the defendant, or does the commitment have in it any of the qualities of a sentence? Is this commitment an act of the court in final disposition of the case in lieu of sentence? Does the court so dispose of the indictment that there is no further power to sentence? These are the questions which are presented.

One might wish that the statutes were a little more explicit upon this subject. However, their intent and purpose seem clear. Section 438 of the Correction Law provides that after sentence and upon a certificate of mental defectiveness by two qualified examiners, the court may commit to this institution at Napanoch. This section further provides that this shall be deemed a final disposition of the indictment " except as hereinafter otherwise provided by section four hundred forty-two." Were it not for this exception we would undoubtedly find it necessary to grant the motion of the defendant. But it seems to us that the exception provides for a continuing jurisdiction.

Section 442 of the Correction Law provides that if the confinement of an individual in the institution at Napanoch is found by the Commissioner to be unsuitable, then the Commissioner of Correction shall so certify in writing to the court or judge which made the original order of commitment. The section also contains provision that if the defendant be not then discharged or otherwise disposed of within fifteen days, the Commissioner of Correction may direct his discharge from the institution and *his return to the official from whom last received or to the Sheriff of the county in which such court was held or such order was made.*

It seems clear to us that these provisions of law make it possible for the Commissioner of Correction to review and pass upon the certificates of mental defectiveness upon which the court first commits. The more careful study of a defendant which comes from some days' association makes possible a better and fairer determination of his condition of mentality. The court in the first instance must perforce act upon the certificates of those who may not have had an extended opportunity for observation. The provisions of the law above-quoted make it possible for the Commissioner of Correction, after commitment to the institution, to cause a more extended study and then if the individual is found unsuitable for the institution at Napanoch, to direct the return of that individual to the court. Under such a plan of procedure the court never loses jurisdiction.

It seems to us also that the commitment in question was not in any sense a sentence. In effect, what occurred when the court committed the defendant to the institution at Napanoch was the legal declaration that the defendant *may not be sentenced* because of his defectiveness but shall henceforth be confined in the institution in question, or shall be subject to the orders for parole in that institution. It is contemplated that his condition of defectiveness is a condition which will not improve but that he will henceforth be subject to the parole directions of the institution in question.

In the case before us the careful study made at the institution discloses that this defendant was not at the time of commitment, and is not now, of that state or degree of mental defectiveness which requires or permits his commitment as previously ordered. Therefore, his defectiveness does not now prevent his sentence. He has never yet been sentenced. The pronouncement of sentence has only been postponed, or barred, or prevented by the commitment. The result is that the defendant now comes before us with all bars to sentence removed. He is not here to be sentenced a second time and the procedure employed does not place him in double jeopardy.

It follows that the motions of the defendant shall be denied, that the motion of the District Attorney shall be granted, and that we shall proceed to sentence.